David J. Aveni, Esq. (SBN 251197)
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101-8484
Telephone: (619) 321-6200
Facsimile: (619) 321-6201
Email: David.Aveni@wilsonelser.com

Attorneys for Defendant, Plaza Home Mortgage, Inc.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN GRUBB, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAZA HOME MORTGAGE, INC.,<br><br>Defendant. | Case No. 3:26-cv-3403<br><br>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed: June 9, 2026 |

Defendant, Plaza Home Mortgage, Inc. ("Defendant"), by its undersigned counsel, for its answer and affirmative defenses to Plaintiffs' Consolidated Class Action Complaint ("Complaint"), states as follows. To the extent any allegation is not expressly admitted, it is denied.

**INTRODUCTION**

1. This class action arises out of the recent targeted ransomware attack and data breach on Defendant's network that occurred on or around February 17, 2026, resulting in unauthorized access to Plaintiffs' and Class Members' highly sensitive data (the "Data Breach" or "Breach"). As a result of the Data Breach, Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present risk of imminent harm caused by the compromise of their sensitive personal information.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including current and former employees and consumers, examples of which are attached hereto as Exhibits A and B. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 1.

2. The specific information compromised in the Data Breach includes Plaintiffs' and Class Members' personally identifiable information ("PII" or "Private Information"), including their names, addresses, Social Security numbers, dates of birth, driver's licenses or other government identification, information related to mortgage loan applications and servicing, and or usernames and passwords for employee accounts.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including current and former employees and consumers, examples of which are attached hereto as Exhibits A and B. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 2.

3. According to Defendant's website, Defendant is "a proven national leader dedicated to Wholesale and Correspondent lending."

**ANSWER:** Defendant admits only that it provides services related to mortgages. The contents of Defendant's website speak for themselves. Defendant denies that the allegations in Paragraph 3 completely describe the nature of Defendant's services. Defendant denies the remaining allegations in Paragraph 3.

4. In connection with the services Defendant provides, Defendant requires Plaintiffs and Class Members to provide it with highly sensitive personal information.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 4.

5. Upon information and belief, up to and through February 2026, Defendant obtained the PII of Plaintiffs and Class Members and stored that PII, unencrypted, in an Internet-accessible

environment on Defendant's network, from which unauthorized actors used an extraction tool to retrieve sensitive PII belonging to Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 5.

6. Plaintiffs' and Class Members' PII—which was entrusted to Defendant, its officials, and agents—was compromised and unlawfully accessed due to the Data Breach which was the direct and proximate result of Defendant's failure to employ reasonable and industry standard data security measures.

**ANSWER:** Defendant denies the allegations in Paragraph 6.

7. Defendant could have prevented or mitigated the consequences of the Data Breach by limiting access to sensitive information to only necessary employees, requiring multi-factor authentication to verify access credentials, encrypting data at rest and in transit, monitoring its systems for signs of unusual activity or the transfer of large volumes of data, and regularly rotating passwords. These are all reasonable and industry standard data security measures.

**ANSWER:** Defendant denies the allegations in Paragraph 7.

8. Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiffs' and Class Members' PII that Defendant collected and maintained, and for Defendant's failure to provide timely and adequate notice to Plaintiffs and other Class Members that their PII had been subject to the unauthorized access of an unknown, unauthorized party.

**ANSWER:** Defendant denies the allegations in Paragraph 8.

9. Defendant maintained the PII in a negligent and/or reckless manner. In particular, the PII was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

**ANSWER:** Defendant denies the allegations in Paragraph 9.

10. In addition, upon information and belief, Defendant and its employees failed to properly monitor the computer network, IT systems, and integrated service that housed Plaintiffs' and Class Members' PII.

**ANSWER:** Defendant denies the allegations in Paragraph 10.

11. Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct because the PII that Defendant collected and maintained is now in the hands of malicious cybercriminals. The risks to Plaintiffs and Class Members will remain for their respective lifetimes.

**ANSWER:** Defendant denies the allegations in Paragraph 11.

12. Upon information and belief, Plaintiffs' PII is now available on the dark web as a result of the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and therefore denies same.

13. Defendant failed to provide timely, accurate, and adequate notice to Plaintiffs and Class Members. Plaintiffs' and Class Members' knowledge about the PII Defendant lost, as well as precisely what type of information was unencrypted and in the possession of unknown third parties, was unreasonably delayed by Defendant's failure to warn impacted persons immediately upon learning of the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 13.

14. Defendant deprived Plaintiffs and Class Members of the earliest opportunity to mitigate their damages caused by the Data Breach by waiting more than three months to notify affected individuals.

**ANSWER:** Defendant denies the allegations in Paragraph 14.

15. Indeed, armed with the PII accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to target other phishing and hacking intrusions using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class

Members' names but with another person's photograph, and giving false information to police during an arrest.

**ANSWER:** Defendant denies the allegations in Paragraph 15.

16. As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a present, heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now closely monitor their financial accounts to guard against identity theft for the rest of their lives.

**ANSWER:** Defendant denies the allegations in Paragraph 16.

17. Plaintiffs and Class Members may also incur out-of-pocket costs for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

**ANSWER:** Defendant denies the allegations in Paragraph 17.

18. By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 18.

19. Accordingly, Plaintiffs bring claims on behalf of themselves and the Class for: (i) negligence/negligence per se, (ii) breach of implied contract; (iii) unjust enrichment; (iv) violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, et seq.; (v) violation of the California Consumer Records Act, Cal. Civ. Code § 1798.80, et seq.; and (vi) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. Through these claims, Plaintiffs seek, inter alia, damages and injunctive relief, including improvements to Defendant's data security systems and integrated services, future annual audits, and adequate credit monitoring services.

**ANSWER:** Paragraph 19 states legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendant denies the allegations in Paragraph 19.

## PARTIES

20. Plaintiff Kevin Grubb is, and at all times mentioned herein was, an individual resident and citizen of the State of South Carolina.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore denies same.

21. Plaintiff April Powell is, and at all times mentioned herein was, an individual resident and citizen of the State of California.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore denies same.

22. Plaintiff Nathan Regehr is, and at all times mentioned herein was, an individual resident and citizen of the State of California.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and therefore denies same.

23. Plaintiff Rex Allen is, and at all times mentioned herein was, an individual resident and citizen of the State of California.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies same.

24. Plaintiff Jane Doe is, and at all times mentioned herein was, an individual resident and citizen of the State of California.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies same.

25. Defendant Plaza Home Mortgage, Inc. is a corporation organized under the laws of California with its headquarters and principal place of business located at 9808 Scranton Road, Suite 3000, San Diego, CA 92121.

**ANSWER:** Defendant admits that it is a corporation organized under the laws of California with its principal place of business in San Diego, California.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class,

and at least one member of the class, namely Plaintiff Grubb, a citizen of South Carolina, is a citizen of a state different from Defendant.

**ANSWER:** Subject to its affirmative defenses, Defendant does not contest jurisdiction in this Court. Defendant denies the remaining allegations in Paragraph 26.

27. This Court has personal jurisdiction over Defendant because its principal place of business is in this District, it regularly conducts business in this District, and the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

**ANSWER:** Subject to its affirmative defenses, Defendant does not contest jurisdiction in this Court. Defendant denies the remaining allegations in Paragraph 27.

28. Venue is proper under 28 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

**ANSWER:** Subject to its affirmative defenses, Defendant does not contest venue in this Court. Defendant denies the remaining allegations in Paragraph 28.

**BACKGROUND FACTS**

29. According to Defendant's website, Defendant is "a proven national leader dedicated to Wholesale and Correspondent lending."

**ANSWER:** Defendant admits only that it provides services related to mortgages. The contents of Defendant's website speak for themselves. Defendant denies that the allegations in Paragraph 29 completely describe the nature of Defendant's services. Defendant denies the remaining allegations in Paragraph 29.

30. In connection with the services Defendant provides, Defendant requires Plaintiffs and Class Members to provide it with highly sensitive personal information.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 30.

31. At the time of the Data Breach, Defendant maintained the PII of Plaintiffs and Class Members, including but not limited to their name, address, Social Security number, date of birth,

driver's license or other government identification, and information related to mortgage loan applications and servicing.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 31.

32. Plaintiffs and Class Members directly or indirectly entrusted Defendant with sensitive and confidential PII, which includes information that is static, does not change, and can be used to commit myriad financial crimes.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 32.

33. Because of the highly sensitive and personal nature of the information Defendant acquires, stores, and has access to, Defendant, upon information and belief, promised to, among other things: keep PII private; comply with industry standards related to data security and PII; inform individuals of their legal duties and comply with all federal and state laws protecting PII; only use and release PII for legitimate business purposes; and provide adequate notice to impacted individuals if their PII is disclosed without authorization, including through its privacy policy disclosures.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 33. Defendant denies the remaining allegations in Paragraph 33.

34. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from unauthorized disclosure.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or

completely stated in Paragraph 34. Defendant denies the remaining allegations in Paragraph 34.

35. Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and therefore denies same.

36. Plaintiffs and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their PII confidential and securely maintained, to use such PII solely for business purposes, and to prevent the unauthorized disclosures of the PII.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and therefore denies same.

37. On or around May 29, 2026, Defendant began sending Data Breach victims a Notice letter ("Notice") informing them that:

WHAT HAPPENED?

Plaza Home Mortgage, Inc. ("Plaza" or "we") experienced a security incident involving unauthorized access to one employee's computer on or around February 17, 2026. Threat actors illegally accessed our information systems without permission. Our security controls immediately informed us about the access, and we took action immediately to shut down the attack. Based on our investigation about this issue, an unauthorized party may have obtained some of your personal information.

WHAT INFORMATION WAS INVOLVED?

The personal information that may have been accessed may have included your name, address, social security number, birth date, driver's license or other government identification and information related to mortgage loan applications and servicing [and username and password for employee accounts].

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including current and former employees and

consumers, examples of which are attached hereto as Exhibits A and B. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 37.

38. It is likely the Defendant was targeted due to its status as a financial services provider that collects, creates, and maintains sensitive PII.

**ANSWER:** Defendant denies the allegations in Paragraph 38.

39. Upon information and belief, the cyberattack was expressly designed to target and gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiffs and the Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 39.

40. Upon information and belief, and based on Defendant's Notice, it is plausible and likely that Plaintiffs' PII was stolen in the Data Breach. Plaintiffs further believe their PII was likely subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including current and former employees and consumers, examples of which are attached hereto as Exhibits A and B. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 40.

41. To be clear – there are numerous issues with Defendant's Data Breach, but the deficiencies in the Data Breach Notice exacerbate the circumstances for victims of the Data Breach: (1) Defendant waited over three months to notify Plaintiffs and Class Members of the Data Breach; and (2) Defendant fails to state how the breach itself occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including current and former employees and consumers, examples of which are attached hereto as Exhibits A and B. The contents of

those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 41.

42. The Identity Theft Research Center's 2024 Annual Data Breach Report notes that, "approximately 70 percent of cyberattack-related breach notices did not include attack information, compared to 58 percent in 2023. In 2019 and previous years, ~100 percent of breach notices included attack vector information." Eva Velasquez, CEO of the Identity Theft Resource Center, remarked that "[w]ith a near-record number of compromises and over 1.3 billion victim notices, often tied to inadequate cyber practices, we are also seeing an increase in notices that provide limited actionable information for victims."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 42 and therefore denies same. Defendant denies the remaining allegations in Paragraph 42.

43. Furthermore, Defendant's delay in notifying Plaintiffs and Class Members of the Data Breach is in direct violation of Defendant's responsibilities under the data breach notification statute in California. See Cal. Civ. Code § 1798.82(a)(2), which requires that the disclosure notification be "made in the most expedient time possible and without unreasonable delay".

**ANSWER:** Defendant denies the allegations in Paragraph 43.

44. Defendant had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 44. Defendant denies the remaining allegations in Paragraph 44.

45. Because of the Data Breach, data thieves were able to gain access to Defendant's private systems on or around February 17, 2026, and were able to target, access, and acquire the protected PII of Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 45.

46. Defendant had obligations created by contract, industry standards, common law, and its own promises and representations made to Plaintiffs and Class Members to keep their PII confidential and to protect them from unauthorized access and disclosure.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 46. Defendant denies the remaining allegations in Paragraph 46.

47. Plaintiffs and the Class Members reasonably relied (directly or indirectly) on Defendant's sophistication and representations to keep their sensitive PII confidential; to maintain proper system security; to use this information for business purposes only; and to make only authorized disclosures of their PII.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 regarding Plaintiffs' or the putative class members' subjective beliefs and therefore denies same. Defendant denies the remaining allegations in Paragraph 47.

48. Plaintiffs' and Class Members' unencrypted, unredacted PII was compromised due to Defendant's negligent and/or careless acts and omissions, and due to the utter failure to protect Class Members' PII. Criminal hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The risks to Plaintiffs and Class Members will remain for their respective lifetimes.

**ANSWER:** Defendant denies the allegations in Paragraph 48.

49. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in industries holding significant amounts of PII preceding the date of the breach.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 49. Defendant denies the remaining allegations in Paragraph 49.

50. Defendant knew or should have known that its electronic records and PII it maintained would be targeted by cybercriminals and ransomware attack groups and knew or should have known that these attacks were common and foreseeable.

**ANSWER:** Defendant denies the allegations in Paragraph 50.

51. In light of high profile data breaches at other industry leading companies, including T-Mobile USA (37 million records, February-March 2023), 23andMe, Inc. (20 million records, October 2023), Wilton Reassurance Company (1.4 million records, June 2023), and NCB Management Services, Inc. (1 million records, February 2023), Defendant knew or should have known that the electronic records and PII it maintained would be targeted by cybercriminals and ransomware attack groups.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning third-party data breaches in Paragraph 51 and therefore denies same. Defendant denies the remaining allegations in Paragraph 51.

52. In 2024, there were 3,158 data breaches with 1,350,835,988 victim notices, a 211% increase year over year. In 2024, financial services companies like Defendant were the most targeted companies in all measured industries.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 52 and therefore denies same. Defendant denies the remaining allegations in Paragraph 52.

53. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of them and take appropriate measures to prepare for and are able to thwart such an attack.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and therefore denies same.

54. Additionally, as companies became more dependent on computer systems to run their business, e.g., working remotely as a result of the COVID-19 pandemic, and the Internet of

Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.

**ANSWER:** Defendant denies the allegations in Paragraph 54.

55. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

**ANSWER:** Defendant denies the allegations in Paragraph 55.

56. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

**ANSWER:** Defendant denies the allegations in Paragraph 56.

57. Despite the prevalence of public announcements of data breaches and data security compromises, and despite its own acknowledgment of its duties to keep the Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and the proposed Class from being compromised.

**ANSWER:** Defendant denies the allegations in Paragraph 57.

58. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 58.

59. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 59 and therefore denies same. Defendant admits only those duties that arise by

operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 59. Defendant denies the remaining allegations in Paragraph 59.

60. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 60 and therefore denies same. Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 60. Defendant denies the remaining allegations in Paragraph 60.

61. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 61 and therefore denies same. Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant

are accurately or completely stated in Paragraph 61. Defendant denies the remaining allegations in Paragraph 61.

62. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 62. Defendant denies the remaining allegations in Paragraph 62.

63. These FTC enforcement actions include actions against financial institutions like Defendant.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 63. Defendant denies the remaining allegations in Paragraph 63.

64. Defendant failed to properly implement basic data security practices.

**ANSWER:** Defendant denies the allegations in Paragraph 64.

65. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' and other impacted individuals' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**ANSWER:** Defendant denies the allegations in Paragraph 65.

66. Defendant was at all times fully aware of its obligation to protect the PII. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**ANSWER:** Defendant denies the allegations in Paragraph 66.

67. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting or redacting the information or deleting it when it is no longer needed.

**ANSWER:** Defendant denies the allegations in Paragraph 67.

68. Defendant could have prevented this Data Breach by, among other things, properly encrypting, redacting, or otherwise protecting its equipment and computer files containing Private Information.

**ANSWER:** Defendant denies the allegations in Paragraph 68.

69. To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed, and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop Protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 69. Defendant denies the remaining allegations in Paragraph 69.

70. To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

Secure Internet-Facing Assets

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

Thoroughly investigate and remediate alerts

- Prioritize and treat commodity malware infections as potential full compromise;

Include IT Pros in security discussions

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

Build credential hygiene

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

Apply principle of least-privilege

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

Harden infrastructure

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or

completely stated in Paragraph 70. Defendant denies the remaining allegations in Paragraph 70.

71. Given that Defendant was storing the Private Information of Plaintiffs and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 71. Defendant denies the remaining allegations in Paragraph 71.

72. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 72.

73. Defendant acquires, collects, and stores a massive amount of Private Information in connection with providing its services and conducting its business.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 73.

74. In connection with the services Defendant provides, Defendant requires that Plaintiffs and Class Members entrust it with highly sensitive personal information.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 74.

75. By obtaining, collecting, and using Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 75. Defendant denies the remaining allegations in Paragraph 75.

76. Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and therefore denies same.

77. Upon information and belief, in the course of collecting Private Information from Plaintiffs and Class Members, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 77. Defendant denies the remaining allegations in Paragraph 77.

78. Plaintiffs and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 regarding Plaintiffs' and the putative class members' subjective beliefs and therefore denies same. Defendant denies the remaining allegations in Paragraph 78.

79. As shown above, experts studying cyber security routinely identify financial institutions as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

**ANSWER:** Defendant denies the allegations in Paragraph 79.

80. Several best practices have been identified that at a minimum should be implemented by financial institutions like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 80. Defendant denies the remaining allegations in Paragraph 80.

81. Other best cybersecurity practices that are standard in the financial industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 81. Defendant denies the remaining allegations in Paragraph 81.

82. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 82. Defendant denies the remaining allegations in Paragraph 82.

83. These foregoing frameworks are existing and applicable industry standards in the financial industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 83. Defendant denies the remaining allegations in Paragraph 83.

84. Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and website's application flow. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. failing to adequately protect PII;

c. failing to properly monitor its own data security systems for existing intrusions;

d. failing to ensure that its vendors with access to its computer systems and data employed reasonable security procedures;

e. failing to ensure the confidentiality and integrity of electronic PII it created, received, maintained, and/or transmitted;

f. failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights;

g. failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

h. failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

i. failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PII;

j. failing to train all members of its workforce effectively on the policies and procedures regarding PII;

k. failing to render the electronic PII it maintained unusable, unreadable, or indecipherable to unauthorized individuals;

l. failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

m. failing to adhere to industry standards for cybersecurity as discussed above; and,

n. otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' PII.

**ANSWER:** Defendant denies the allegations in Paragraph 84, including subparagraphs (a) through (n), inclusive.

85. Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' PII by allowing cyberthieves to access Defendant's computer systems, which provided unauthorized actors with unsecured and unencrypted PII.

**ANSWER:** Defendant denies the allegations in Paragraph 85.

86. Accordingly, as outlined below, Plaintiffs and Class Members now face a present, increased risk of fraud and identity theft. In addition, Plaintiffs and the Class Members also lost the benefit of the bargain they made with Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 86.

87. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

**ANSWER:** Paragraph 87 references regulatory definitions that speak for themselves. Defendant denies the remaining allegations in Paragraph 87.

88. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 and therefore denies same.

89. For example, Private Information can be sold at a price ranging from $40 to $200. Criminals can also purchase access to entire company data breaches from $900 to $4,500.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 and therefore denies same.

90. Of course, a stolen Social Security number – standing alone – can be used to wreak untold havoc upon a victim's personal and financial life. The popular person privacy and credit monitoring service LifeLock by Norton notes "Five Malicious Ways a Thief Can Use Your Social Security Number," including 1) Financial Identity Theft that includes "false applications for loans, credit cards or bank accounts in your name or withdraw money from your accounts, and which can encompass credit card fraud, bank fraud, computer fraud, wire fraud, mail fraud and employment fraud; 2) Government Identity Theft, including tax refund fraud; 3) Criminal Identity Theft, which involves using someone's stolen Social Security number as a "get out of jail free card;" 4) Medical Identity Theft, and 5) Utility Fraud.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 90 and therefore denies same. Defendant denies the remaining allegations in Paragraph 90.

91. It is little wonder that courts have dubbed a stolen Social Security number as the "gold standard" for identity theft and fraud. Social Security numbers, which, upon information and belief, were compromised for Class Members in the Data Breach, are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

**ANSWER:** Defendant denies the allegations in Paragraph 91.

92. According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases." Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 92 and therefore denies same. Defendant denies the remaining allegations in Paragraph 92.

93. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiffs and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 93 and therefore denies same. Defendant denies the remaining allegations in Paragraph 93.

94. In fact, "[a] stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health." "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 94 and therefore denies same. Defendant denies the remaining allegations in Paragraph 94.

95. What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95 regarding the process to change or cancel a Social Security number and therefore denies same. Defendant denies the remaining allegations in Paragraph 95.

96. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 96 and therefore denies same. Defendant denies the remaining allegations in Paragraph 96.

97. For these reasons, some courts have referred to Social Security numbers as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security numbers."), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (citations

omitted) (S.D.N.Y. Mar. 8, 2021) (the court noted that Plaintiffs' Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, ... tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target his in fraudulent schemes and identity theft attacks.")

**ANSWER:** Paragraph 97 cites nonprecedential judicial opinions that speak for themselves. Defendant denies the remaining allegations in Paragraph 97.

98. Similarly, the California state government warns consumers that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 98 and therefore denies same. Defendant denies the remaining allegations in Paragraph 98.

99. Driver's license numbers, which were compromised in the Data Breach, are incredibly valuable. "Hackers harvest license numbers because they're a very valuable piece of information."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 99 and therefore denies same. Defendant denies the remaining allegations in Paragraph 99.

100. A driver's license can be a critical part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web. On its own, a forged license can sell for around $200.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and therefore denies same.

101. According to national credit bureau Experian:

> A driver's license is an identity thief's paradise. With that one card, someone knows your birthdate, address, and even your height, eye color, and signature. If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep a copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license number is one of the most important pieces of information to keep safe from thieves.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 101 and therefore denies same.

102. According to cybersecurity specialty publication CPO Magazine, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation." However, this is not the case. As cybersecurity experts point out:

> "It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 102 and therefore denies same.

103. Victims of driver's license number theft also often suffer unemployment benefit fraud, as described in a New York Times article.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 103 and therefore denies same.

104. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. Upon information and belief, the information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security numbers, dates of birth, and names.

**ANSWER:** Defendant denies the allegations in Paragraph 104.

105. The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 105 and therefore denies same. Defendant denies the remaining allegations in Paragraph 105.

106. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

**ANSWER:** Defendant denies the allegations in Paragraph 106.

107. The unencrypted Private Information of Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 regarding the *modus operandi* of hackers and therefore denies same. Defendant denies the remaining allegations in Paragraph 107.

108. Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiffs and Class Members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiffs and Class Members.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 regarding the potential actions of third parties and therefore denies same. Defendant denies the remaining allegations in Paragraph 108.

109. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

**ANSWER:** Defendant denies the allegations in Paragraph 109.

110. Plaintiffs' and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiffs and Class Members and to profit off their misfortune.

**ANSWER:** Defendant denies the allegations in Paragraph 110.

111. Due to the risk of one's Social Security number being exposed, state legislatures have passed laws in recognition of the risk: "[t]he social security number can be used as a tool to perpetuate fraud against a person and to acquire sensitive personal, financial, medical, and familial information, the release of which could cause great financial or personal harm to an individual. While the social security number was intended to be used solely for the administration of the

federal Social Security System, over time this unique numeric identifier has been used extensively for identity verification purposes[.]"

**ANSWER:** Paragraph 111 references statutory language that speaks for itself. Defendant denies the remaining allegations in Paragraph 111.

112. Moreover, "SSNs have been central to the American identity infrastructure for years, being used as a key identifier[.] . . . U.S. banking processes have also had SSNs baked into their identification process for years. In fact, SSNs have been the gold standard for identifying and verifying the credit history of prospective customers."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 112 and therefore denies same.

113. "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a customer's identity after the initial account setup[.]" Accordingly, since Social Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account."

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 113 and therefore denies same.

114. One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.

**ANSWER:** Defendant denies the allegations in Paragraph 114.

115. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

**ANSWER:** Defendant denies the allegations in Paragraph 115.

116. The development of “Fullz” packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs’ and Class Members’ phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**ANSWER:** Defendant denies the allegations in Paragraph 116.

117. The existence and prevalence of “Fullz” packages means that the Private Information stolen from the data breach can easily be linked to the unregulated data (like contact information) of Plaintiffs and the other Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 117.

118. Thus, even if certain information (such as contact information) was not stolen in the data breach, criminals can still easily create a comprehensive “Fullz” package.

**ANSWER:** Defendant denies the allegations in Paragraph 118.

119. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

**ANSWER:** Defendant denies the allegations in Paragraph 119.

120. As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet, the resource and asset of time has been lost.

**ANSWER:** Defendant denies the allegations in Paragraph 120.

121. Plaintiffs' and Class Members' time is highly valuable and irreplaceable, and accordingly, Plaintiffs and Class Members suffered actual injury and damages in the form of lost time that they spent on mitigation activities in response to the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121 regarding Plaintiffs' mitigation activities and therefore denies same. Defendant denies the remaining allegations in Paragraph 121.

122. Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach, signing up for credit monitoring insurance services, and placing locks on their credit accounts. Accordingly, the Data Breach has caused Plaintiffs and Class Members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122 regarding Plaintiffs' mitigation activities and therefore denies same. Defendant denies the remaining allegations in Paragraph 122.

123. Plaintiffs' mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123 regarding Plaintiffs' mitigation activities and therefore denies same. Defendant denies the remaining allegations in Paragraph 123.

124. And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face substantial costs and time to repair the damage to their good name and credit record.

**ANSWER:** Defendant denies the allegations in Paragraph 124.

125. PII is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

**ANSWER:** Defendant denies the allegations in Paragraph 125.

126. Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the hearsay statements of the non-parties Plaintiffs purport to reference in Paragraph 126 and therefore denies same.

127. An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127 and therefore denies same.

128. In fact, the data marketplace is so sophisticated that Plaintiffs and Class Members can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 and therefore denies same.

129. Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60.00 a year.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129 and therefore denies same.

130. As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an

economic loss. Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

**ANSWER:** Defendant denies the allegations in Paragraph 130.

131. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiffs and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

**ANSWER:** Defendant denies the allegations in Paragraph 131.

132. The fraudulent activity resulting from the Data Breach may not come to light for years.

**ANSWER:** Defendant denies the allegations in Paragraph 132.

133. Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

**ANSWER:** Defendant denies the allegations in Paragraph 133.

134. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

**ANSWER:** Defendant denies the allegations in Paragraph 134.

135. The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 135.

136. Given the type of targeted attack in this case, sophisticated criminal activity, the type of Private Information involved, and Plaintiffs' Private Information already being disseminated on the dark web, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by

criminals intending to utilize the Private Information for identity theft crimes –e.g., opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

**ANSWER:** Defendant denies the allegations in Paragraph 136.

137. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

**ANSWER:** Defendant denies the allegations in Paragraph 137.

138. Consequently, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**ANSWER:** Defendant denies the allegations in Paragraph 138.

139. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 139.

140. Furthermore, Defendant's poor data security practices deprived Plaintiffs and Class Members of the benefit of their bargain. When agreeing to directly or indirectly pay Defendant for services, Plaintiffs and other reasonable Class Members understood and expected that they were, in part, paying for the services and necessary data security to protect the Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiffs and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 140.

**Plaintiff Kevin Grubb's Experiences**

141. Defendant acquired Plaintiff Grubb's Private Information in connection with the services Defendant provides.

**ANSWER:** Defendant admits only that it provided certain services to Plaintiff Grubb. Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 141.

142. Plaintiff Grubb is very careful about sharing his sensitive Private Information. Plaintiff Grubb never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 and therefore denies same.

143. Plaintiff Grubb first learned of the Data Breach after receiving a Notice letter from Defendant dated May 29, 2026.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143 and therefore denies same.

144. According to the Notice, Plaintiff Grubb's name, address, Social Security number, birth date, driver's license or other government identification and information related to mortgage loan applications and servicing, were exposed in the Data Breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 144.

145. As a result of the Data Breach, Plaintiff Grubb made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, significant time spent filtering through and verifying or managing significant amounts of spam calls, texts, and emails, and on other necessary mitigation efforts.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 and therefore denies same.

146. Plaintiff Grubb has spent significant time and will continue to spend valuable hours for the remainder of his life, that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 and therefore denies same.

147. Plaintiff Grubb suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant maintained belonging to Plaintiff Grubb; (b) violation of his privacy rights; (c) the theft of his PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 147, including subparagraphs (a) through (d), inclusive.

148. As a result of the Data Breach, Plaintiff Grubb has also suffered emotional distress as a result of the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Grubb is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 148.

149. Additionally, since the Data Breach occurred, Plaintiff Grubb has already experienced misuse of his PII. Multiple times since the Data Breach occurred, Plaintiff Grubb has been notified of unauthorized attempts to log in to his Yahoo, Gmail, and Google accounts after an unauthorized person failed two-step authentication procedures for those accounts. Further, Plaintiff Grubb has experienced a significant uptick in spam calls, texts, and emails since the Data Breach occurred. As a result of the timing of the foregoing suspicious activities and the Data Breach, Plaintiff Grubb believes that the suspicious activities are a result of criminals acquiring Plaintiff Grubb's PII in the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149 regarding allegedly unauthorized activities and therefore denies same. Defendant denies that any such alleged activities were caused by or related to the data security incident at issue in this case. Defendant denies the remaining allegations in Paragraph 149.

150. As a result of the Data Breach, Plaintiff Grubb anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Grubb will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of his life.

**ANSWER:** Defendant denies the allegations in Paragraph 150.

**Plaintiff April Powell's Experiences**

151. Plaintiff Powell is a former employee of Defendant and provided Defendant with her PII in connection with her employment with Defendant.

**ANSWER:** Defendant admits that Plaintiff Powell is a former employee of Defendant and that, in connection with Plaintiff Powell's employment with Defendant, Defendant was required by law to obtain certain information relating to Plaintiff Powell. Defendant denies the remaining allegations in Paragraph 151.

152. Plaintiff Powell is very careful about sharing her sensitive Private Information. Plaintiff Powell never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152 and therefore denies same.

153. Plaintiff Powell first learned of the Data Breach after receiving a Notice letter from Defendant dated May 29, 2026.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 153 and therefore denies same.

154. According to the Notice, Plaintiff Powell's name, address, Social Security number, birth date, driver's license or other government identification and information related to mortgage loan applications and servicing, were exposed in the Data Breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 154.

155. As a result of the Data Breach, Plaintiff Powell made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, significant time spent filtering through and verifying or managing significant amounts of spam calls, texts, and emails, and on other necessary mitigation efforts.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155 and therefore denies same.

156. Plaintiff Powell has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 and therefore denies same.

157. Plaintiff Powell suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendant maintained belonging to Plaintiff Powell; (b) violation of her privacy rights; (c) the theft of her PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 157, including subparagraphs (a) through (d), inclusive.

158. As a result of the Data Breach, Plaintiff Powell has also suffered emotional distress as a result of the release of her PII, which she believed would be protected from unauthorized

access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Powell is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 158.

159. Additionally, since the Data Breach occurred, Plaintiff Powell has experienced a significant uptick in spam calls, texts, and emails since the Data Breach occurred. As a result of the timing of the surge in spam and the Data Breach, Plaintiff Powell believes that the increase in spam is a result of criminals acquiring Plaintiff Powell's PII in the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159 regarding allegedly unauthorized activities and therefore denies same. Defendant denies that any such alleged activities were caused by or related to the data security incident at issue in this case. Defendant denies the remaining allegations in Paragraph 159.

160. As a result of the Data Breach, Plaintiff Powell anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Powell will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

**ANSWER:** Defendant denies the allegations in Paragraph 160.

**Plaintiff Nathan Regehr's Experiences**

161. Plaintiff Regehr is a former employee of Defendant and provided Defendant with his PII in connection with his employment with Defendant.

**ANSWER:** Defendant admits that Plaintiff Regehr is a former employee of Defendant and that, in connection with Plaintiff Regehr's employment with Defendant, Defendant was required by law to obtain certain information relating to Plaintiff Regehr. Defendant denies the remaining allegations in Paragraph 161.

162. Plaintiff Regehr is very careful about sharing his sensitive Private Information. Plaintiff Regehr never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 and therefore denies same.

163. Plaintiff Regehr first learned of the Data Breach after receiving a Notice letter from Defendant dated May 29, 2026.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 163 and therefore denies same.

164. According to the Notice, Plaintiff Regehr's name, Social Security number, birth date, and his username and password for his employee account were exposed in the Data Breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 164.

165. As a result of the Data Breach, Plaintiff Regehr made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, significant time spent filtering through and verifying or managing significant amounts of spam calls, texts, and emails, and on other necessary mitigation efforts.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 and therefore denies same.

166. Plaintiff Regehr has spent significant time and will continue to spend valuable hours for the remainder of his life, that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 and therefore denies same.

167. Plaintiff Regehr suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant maintained belonging to Plaintiff Regehr; (b) violation of his privacy rights; (c) the theft of his PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 167, including subparagraphs (a) through (d), inclusive.

168. As a result of the Data Breach, Plaintiff Regehr has also suffered emotional distress as a result of the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Regehr is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 168.

169. Additionally, since the Data Breach occurred, Plaintiff Regehr has already experienced misuse of his PII. Approximately 6 or 7 times since the Data Breach occurred, Plaintiff Regehr has been notified of unauthorized attempts to log in to his Apple ID and Google accounts. Further, Plaintiff Regehr has experienced a significant uptick in spam calls, texts, and emails since the Data Breach occurred. As a result of the timing of the foregoing suspicious activities and the Data Breach, Plaintiff Regehr believes that the suspicious activities are a result of criminals acquiring Plaintiff Regehr's PII in the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169 regarding allegedly unauthorized activities and therefore denies same. Defendant denies that any such alleged activities were caused by or related to the data security incident at issue in this case. Defendant denies the remaining allegations in Paragraph 169.

170. As a result of the Data Breach, Plaintiff Regehr anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Regehr will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of his life.

**ANSWER:** Defendant denies the allegations in Paragraph 170.

**Plaintiff Rex Allen's Experiences**

171. Plaintiff Allen is a former client of Defendant and provided his Private Information to Defendant in connection with the services Defendant provides.

**ANSWER:** Defendant admits only that it provided certain services to Plaintiff Allen. Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 171.

172. Plaintiff Allen is very careful about sharing his sensitive Private Information. Plaintiff Allen never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172 and therefore denies same.

173. Plaintiff Allen first learned of the Data Breach after receiving a Notice letter from Defendant dated May 29, 2026.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 173 and therefore denies same.

174. According to the Notice, Plaintiff Allen's Private Information was exposed in the Data Breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 174.

175. As a result of the Data Breach, Plaintiff Allen made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, significant time spent filtering through and verifying or managing significant amounts of spam calls, texts, and emails, contacting his bank and Experian about the Data Breach, and on other necessary mitigation efforts.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 and therefore denies same.

176. Plaintiff Allen has spent significant time and will continue to spend valuable hours for the remainder of his life that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176 and therefore denies same.

177. Plaintiff Allen suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant maintained belonging to Plaintiff Allen; (b) violation of his privacy rights; (c) the theft of his PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 177, including subparagraphs (a) through (d), inclusive.

178. As a result of the Data Breach, Plaintiff Allen has also suffered emotional distress as a result of the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Allen is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 178.

179. Additionally, since the Data Breach occurred, Plaintiff Allen has already experienced misuse of his PII. After the Data Breach occurred, Plaintiff Allen discovered that there

was an unauthorized attempt to open a new Capital One credit card using his PII after being informed by his bank, Wells Fargo, about the attempt. The attempt resulted in his credit score being lowered. Plaintiff Allen has also received a dark web notification from CreditWise informing him that his PII was found on the dark web. Further, Plaintiff Allen has experienced a significant uptick in spam calls, texts, and emails since the Data Breach occurred. As a result of the timing of the foregoing suspicious activities and the Data Breach, Plaintiff Allen believes that the suspicious activities are a result of criminals acquiring Plaintiff Allen's PII in the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179 regarding allegedly unauthorized activities and therefore denies same. Defendant denies that any such alleged activities were caused by or related to the data security incident at issue in this case. Defendant denies the remaining allegations in Paragraph 179.

180. As a result of the Data Breach, Plaintiff Allen anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Allen will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of his life.

**ANSWER:** Defendant denies the allegations in Paragraph 180.

**Plaintiff Jane Doe's Experiences**

181. Defendant acquired Plaintiff Doe's Private Information in connection with the services Defendant provides.

**ANSWER:** Defendant admits only that it provided certain services to Plaintiff Doe. Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 181.

182. Plaintiff Doe is very careful about sharing her sensitive Private Information. Plaintiff Doe never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 and therefore denies same.

183. Plaintiff Doe first learned of the Data Breach after receiving a Notice letter from Defendant dated May 29, 2026.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 183 and therefore denies same.

184. According to the Notice, Plaintiff Doe's name, address, Social Security number, birth date, driver's license or other government identification and information related to mortgage loan applications and servicing were exposed in the Data Breach.

**ANSWER:** Defendant admits only that on May 29, 2026, it mailed notices of a cybersecurity incident to certain individuals, including Plaintiffs. The contents of those notices speak for themselves. Defendant denies the remaining allegations in Paragraph 184.

185. As a result of the Data Breach, Plaintiff Doe made reasonable efforts to mitigate the impact of the Data Breach after receiving notice of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud, significant time spent filtering through and verifying or managing significant amounts of spam calls, texts, and emails, significant time spent remedying fraudulent misuse of her PII, and on other necessary mitigation efforts.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185 and therefore denies same.

186. Plaintiff Doe has spent significant time and will continue to spend valuable hours for the remainder of her life, that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186 and therefore denies same.

187. Plaintiff Doe suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendant maintained belonging to Plaintiff Doe; (b) violation of her privacy rights; (c) the theft of her PII; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 187, including subparagraphs (a) through (d), inclusive.

188. As a result of the Data Breach, Plaintiff Doe has also suffered emotional distress as a result of the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Doe is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 188.

189. Additionally, since the Data Breach occurred, Plaintiff Doe has already experienced misuse of her PII. Multiple times since the Data Breach occurred, Plaintiff Doe has been notified of unauthorized attempts to log in to her email and Apple accounts. Further, since the Data Breach occurred, Plaintiff Doe has also received fraud alerts concerning numerous fraudulent bank charges across several of her bank accounts and credit cards. Plaintiff Doe has reported the bank fraud to get her money returned, her cards put on hold, and new cards issued. The foregoing fraudulent charge attempts have lowered her credit score and impacted her ability to obtain a loan or access other credit. Finally, Plaintiff Doe has experienced a significant uptick in spam calls, texts, and emails since the Data Breach occurred. As a result of the timing of the foregoing suspicious activities and the Data Breach, Plaintiff Doe believes that the suspicious activities are a result of criminals acquiring Plaintiff Doe's PII in the Data Breach.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 regarding allegedly unauthorized activities and therefore denies same. Defendant denies that any such alleged activities were caused

by or related to the data security incident at issue in this case. Defendant denies the remaining allegations in Paragraph 189.

190. As a result of the Data Breach, Plaintiff Doe anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff Doe will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

**ANSWER:** Defendant denies the allegations in Paragraph 190.

**CLASS ACTION ALLEGATIONS**

191. Plaintiffs bring this action, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure on behalf of a class defined as:

Nationwide Class: All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

California Subclass: All individuals residing in the State of California whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "California Subclass").

The "Class" and the "California Subclass" are sometimes collectively referred to herein as the "Classes" or the "Class".

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 191.

192. Excluded from the Classes are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 192.

193. Plaintiffs reserve the right to amend or modify the Class definitions as this case progresses.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 193.

194. Numerosity. The Members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of affected individuals is unknown, upon information and belief, hundreds and possibly even thousands of individuals had their PII compromised in this data breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 194.

195. Commonality. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. if Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' PII;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. if Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. if Defendant owed a duty to Class Members to safeguard their PII;

f. if Defendant breached its duty to Class Members to safeguard their PII;

g. if Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h. if Defendant should have discovered the Data Breach sooner;

i. if Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

j. if Defendant's conduct was negligent;

k. if Defendant breached implied contracts with Plaintiffs and Class Members;

l. if Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiffs and Class Members;

m. if Defendant failed to provide notice of the Data Breach in a timely manner; and

n. if Plaintiffs and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 195, including subparagraphs (a) through (n), inclusive.

196. Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' information, like that of every other Class Member, was compromised in the Data Breach.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 196.

197. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 197.

198. Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 198.

199. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 199.

200. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 200.

201. Likewise, particular issues under Rule 23(c)(4)(a) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. if Defendant failed to timely notify the public of the Data Breach;

b. if Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c. if Defendant's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

d. if Defendant's failure to institute adequate protective security measures amounted to negligence;

e. if Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

f. if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 201, including subparagraphs (a) through (f), inclusive.

202. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**ANSWER:** Defendant denies that this matter is appropriate for class treatment and denies the remaining allegations in Paragraph 202.

**FIRST CAUSE OF ACTION**

**Negligence/Negligence *per se***

**(On Behalf of Plaintiffs and the Class)**

203. Plaintiffs repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

204. Plaintiffs and the Class directly or indirectly entrusted Defendant with their PII on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 204.

205. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

**ANSWER:** Defendant denies the allegations in Paragraph 205.

206. Plaintiffs and Class members relied on Defendant to exercise its professional judgment in deciding how to safeguard their PII from cyberattacks and Plaintiffs and Class Members had no way of verifying or auditing the integrity of Defendant's data security measures.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206 regarding Plaintiffs' and the putative class members' subjective beliefs and therefore denies same. Defendant denies the remaining allegations in Paragraph 206.

207. By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 207. Defendant denies the remaining allegations in Paragraph 207.

208. Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or

completely stated in Paragraph 208. Defendant denies the remaining allegations in Paragraph 208.

209. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and individuals who entrusted it with PII, which is recognized by laws and regulations, as well as common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 209. Defendant denies the remaining allegations in Paragraph 209.

210. Defendant's duty to use reasonable security measures required Defendant to reasonably protect confidential data from any intentional or unintentional use or disclosure.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 210. Defendant denies the remaining allegations in Paragraph 210.

211. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 211. Defendant denies the remaining allegations in Paragraph 211.

212. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or completely stated in Paragraph 212. Defendant denies the remaining allegations in Paragraph 212.

213. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. failing to adequately monitor the security of its networks and systems;

c. failing to have in place mitigation policies and procedures;

d. allowing unauthorized access to Class Members' PII;

e. failing to detect in a timely manner that Class Members' PII had been compromised; and

f. failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

**ANSWER:** Defendant denies the allegations in Paragraph 213, including subparagraphs (a) through (f), inclusive.

214. Defendant owed to Plaintiffs and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the data breach. This duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the data breach.

**ANSWER:** Defendant admits only those duties that arise by operation of law and Defendant denies that any such duties that could apply to Defendant are accurately or

completely stated in Paragraph 214. Defendant denies the remaining allegations in Paragraph 214.

215. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 215.

216. Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

**ANSWER:** Defendant denies the allegations in Paragraph 216.

217. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and Class Members' PII.

**ANSWER:** Defendant denies the allegations in Paragraph 217.

218. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

**ANSWER:** Defendant denies the allegations in Paragraph 218.

219. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Class Members and the importance of exercising reasonable care in handling it.

**ANSWER:** Defendant denies the allegations in Paragraph 219.

220. Defendant breached its duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiffs

and Class Members—which actually and proximately caused the Data Breach and injured Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 220.

221. Defendant further breached its duties by failing to provide reasonably timely notice of the data breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the data breach and Plaintiffs and Class Members' injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

**ANSWER:** Defendant denies the allegations in Paragraph 221.

222. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the data breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**ANSWER:** Defendant denies the allegations in Paragraph 222.

**SECOND CAUSE OF ACTION**

**Breach of Implied Contract**

**(On Behalf of the Plaintiffs and the Class)**

223. Plaintiffs repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

224. Plaintiffs and the Class directly or indirectly entrusted their PII to Defendant in connection with the services Defendant provides. In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such

information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

**ANSWER:** Defendant denies the allegations in Paragraph 224.

225. At the time Defendant acquired the PII of Plaintiffs and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII, including as reflected in its privacy policy disclosures.

**ANSWER:** Defendant denies the allegations in Paragraph 225.

226. Implicit in the agreements between Plaintiffs and Class Members and Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

**ANSWER:** Defendant denies the allegations in Paragraph 226, including subparagraphs (a) through (f), inclusive.

227. Plaintiffs and the Class would not have entrusted their PII to Defendant had they known that Defendant would make the PII internet-accessible, not encrypt sensitive data elements, and not delete the PII that Defendant no longer had a reasonable need to maintain.

**ANSWER:** Defendant denies the allegations in Paragraph 227.

228. Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 228.

229. Defendant breached the implied contracts they made with Plaintiffs and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiffs and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 229.

230. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

**ANSWER:** Defendant denies the allegations in Paragraph 230.

231. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 231.

## THIRD CAUSE OF ACTION

**Unjust Enrichment**

**(On Behalf of the Plaintiffs and the Class)**

232. Plaintiffs repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

233. This Count is pled in the alternative to Count II above, breach of implied contract.

**ANSWER:** Paragraph 233 does not contain factual allegations to which a response is required. To the extent a response is deemed necessary, Defendant denies the allegations in Paragraph 233.

234. Plaintiffs and Class Members conferred a benefit on Defendant by turning over their PII to Defendant for the purposes of receiving services and/or having wages withheld, which

should have included cybersecurity protection to protect their PII. Plaintiffs and Class Members reasonably expected a reasonable level of data security. Plaintiffs and Class Members did not receive such protection.

**ANSWER:** Defendant admits only that in the course of providing its services, certain information is exchanged between Defendant and the individuals receiving Defendant's services. Defendant denies the remaining allegations in Paragraph 234.

235. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by and/or wages withheld from Plaintiffs and Class Members.

**ANSWER:** Defendant denies the allegations in Paragraph 235.

236. As such, a portion of the payments made by and/or wages withheld from Plaintiffs and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made and/or wages withheld that is allocated to data security is known to Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 236.

237. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

**ANSWER:** Defendant denies the allegations in Paragraph 237.

238. Defendant knew that Plaintiffs and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiffs and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs and Class Members' PII and prevented the Data Breach.

**ANSWER:** Defendant denies the allegations in Paragraph 238.

239. If Plaintiffs and Class Members had known that Defendant had not adequately secured their PII, they would not have agreed to provide such PII to Defendant.

**ANSWER:** Defendant denies the allegations in Paragraph 239.

240. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize their own profits over the requisite security and the safety of their Private Information.

**ANSWER:** Defendant denies the allegations in Paragraph 240.

241. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of its wrongful conduct.

**ANSWER:** Defendant denies the allegations in Paragraph 241.

242. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 242.

243. Plaintiffs and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**ANSWER:** Defendant denies the allegations in Paragraph 243.

**<u>FOURTH CAUSE OF ACTION</u>**

**Violations of California's Consumer Privacy Act,**

**Cal. Civ. Code § 1798.100, et seq. ("CCPA")**

**(On Behalf of Plaintiffs April Powell, Nathan Regehr,**

**Jane Doe and the California Subclass)**

244. Plaintiffs repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

245. Defendant violated section 1798.150(a) of the CCPA, Cal. Civ. Code § 1798.150(a), by failing to prevent the Private Information of Plaintiffs April Powell, Nathan Regehr, and Jane Doe (hereinafter, for purposes of this Count, the "Plaintiffs") and the California Subclass from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the Private Information.

**ANSWER:** Defendant denies the allegations in Paragraph 245.

246. The non-redacted and non-encrypted PII of Plaintiffs and the California Subclass was subjected to unauthorized access and exfiltration, theft, or disclosure as a direct and proximate result of Defendant's violations of its duty under the CCPA.

**ANSWER:** Defendant denies the allegations in Paragraph 246.

247. Plaintiffs and the California Subclass lost money or property, including but not limited to the loss of legally protected interest in the confidentiality and privacy of their Private Information, nominal damages, and additional losses as a direct and proximate result of Defendant's acts described above.

**ANSWER:** Defendant denies the allegations in Paragraph 247.

248. Defendant knew, or should have known, that its network computer systems and data security practices were inadequate to safeguard Private Information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Private Information, such as properly encrypting the Private Information so that in the event of a data breach, an unauthorized third party cannot read the Private Information. As a result of the failure

to implement reasonable security procedures and practices, the Private Information of Plaintiffs and members of the California Subclass was exposed.

**ANSWER:** Defendant denies the allegations in Paragraph 248.

249. Defendant is an entity organized for the financial benefit of its owners and collects Private Information as defined in Cal. Civ. Code § 1798.140.

**ANSWER:** Paragraph 249 states legal conclusions to which no response is required. If a response is deemed necessary, Defendant denies the allegations in Paragraph 249.

250. Plaintiffs and the California Subclass seek injunctive or other equitable relief to ensure that Defendant hereinafter adequately safeguards Private Information by implementing reasonable security procedures and practices. This relief is important because Defendant still holds Private Information related to Plaintiffs and the California Subclass. Plaintiffs and the California Subclass have an interest in ensuring that their Private Information is reasonably protected.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 250.

251. Prior to filing this Complaint, Plaintiffs provided written notice to Defendant identifying the specific provisions of this title they allege it has violated. Following 30 days of Plaintiffs' written notice to Defendant, Defendant did not adequately respond and did not cure the violations complained of herein. Accordingly, pursuant to California law, Plaintiffs seek the greater of actual or statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per individual per incident, or actual damages, whichever is greater. See Cal. Civ. Code § 1798.150(b). Plaintiffs seek all other relief afforded by law.

**ANSWER:** Defendant denies the allegations in Paragraph 251. Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever.

**<u>FIFTH CAUSE OF ACTION</u>**

**Violation of the California Consumer Records Act,**

**Cal. Civ. Code § 1798.80, *et seq.***

**(On Behalf of Plaintiffs April Powell, Nathan Regehr, Rex Allen, and**

**Jane Doe and the California Subclass)**

252. Plaintiffs repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

253. Under the California Consumer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Id. (emphasis added).

**ANSWER:** Paragraph 253 cites statutory language that speaks for itself. Defendant denies the remaining allegations in Paragraph 253.

254. The Data Breach constitutes a "breach of the security system" of Defendant.

**ANSWER:** Paragraph 254 states a legal conclusion to which no response is required. If a response is deemed necessary, Defendant denies the allegations in Paragraph 254.

255. An unauthorized person acquired the personal, unencrypted information of Plaintiffs April Powell, Nathan Regehr, Rex Allen, and Jane Doe (hereinafter, for purposes of this Count, the "Plaintiffs") and the California Subclass.

**ANSWER:** Defendant denies the allegations in Paragraph 255.

256. Defendant knew that an unauthorized individual had acquired the personal, unencrypted information of Plaintiffs and the California Subclass but waited over three months to notify them. Given the severity of the Data Breach, this is an unreasonable delay.

**ANSWER:** Defendant denies the allegations in Paragraph 256.

257. Defendant's unreasonable delay prevented Plaintiffs and the California Subclass from taking appropriate measures to protect themselves against harm.

**ANSWER:** Defendant denies the allegations in Paragraph 257.

258. Because Plaintiffs and the California Subclass were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

**ANSWER:** Defendant denies the allegations in Paragraph 258.

259. Plaintiffs and the California Subclass are entitled to equitable relief and damages in an amount to be determined at trial.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 259.

**SIXTH CAUSE OF ACTION**

**Violation of the California Unfair Competition Law,**

**Cal. Bus. & Prof. Code §17200, et seq. (On Behalf of Plaintiffs April Powell, Nathan Regehr, Rex Allen, Jane Doe and the California Subclass)**

260. Plaintiffs April Powell, Nathan Regehr, Rex Allen, Jane Doe repeat and re-allege the preceding paragraphs of this Complaint and incorporate them by reference herein.

**ANSWER:** Defendant repeats its responses to all preceding paragraphs and incorporates them by reference herein.

261. Defendant is a "person" defined by Cal. Bus. & Prof. Code § 17201.

**ANSWER:** Paragraph 261 states a legal conclusion to which no response is required. To the extent a response is deemed necessary, Defendant admits it is a corporation organized under California law.

262. Defendant violated Cal. Bus. & Prof. Code § 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

**ANSWER:** Defendant denies the allegations in Paragraph 262.

263. Defendant violated Cal. Bus. & Prof. Code § 17200, et seq., by engaging in unlawful and unfair business acts and practices as defined in Cal. Bus. & Prof. Code § 17200.

**ANSWER:** Defendant denies the allegations in Paragraph 263.

264. The acts and omissions identified herein harmed individuals nationwide, including individuals in California, like Plaintiffs April Powell, Nathan Regehr, Rex Allen, and Jane Doe (hereinafter, for purposes of this Count, the "Plaintiffs").

**ANSWER:** Defendant denies the allegations in Paragraph 264.

265. Defendant engaged in unlawful acts and practices by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and the California Subclass members' Private Information with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and the California Subclass members' Private Information in an unsecure electronic environment in violation of California's data breach statutes, Section 5 of the FTC Act, 15 U.S.C. §45, California Customer Records Act, California Civil Code § 1798.81.5, and 45 C.F.R. § 160.103, which require Defendant to take reasonable methods of safeguarding the Private Information of Plaintiffs and the California Subclass members.

**ANSWER:** Defendant denies the allegations in Paragraph 265.

266. In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

**ANSWER:** Defendant denies the allegations in Paragraph 266.

267. Defendant's "unfair" acts and practices include: utilizing cheaper, ineffective security measures and diverting funds to its own profit, instead of providing a reasonable level of security that would have prevented the hacking incident; failing to follow industry standard and the applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data; failing to timely and adequately notify the California Subclass about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass members' personal information.

**ANSWER:** Defendant denies the allegations in Paragraph 267.

268. Defendant's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and California Subclass members. Further, Defendant's conduct narrowly benefited its own business interests at the expense of Plaintiffs' and California Subclass members' fundamental property and privacy interests protected by the California Constitution and the common law.

**ANSWER:** Defendant denies the allegations in Paragraph 268.

269. Defendant's actions caused damage to and loss of Plaintiffs' and California Subclass members' property right to control the dissemination and use of their personal information and communications. Defendant was in an exclusive position to protect the Private Information, and Plaintiffs and California Subclass members had no way of reasonably avoiding the injury.

**ANSWER:** Defendant denies the allegations in Paragraph 269.

270. As a direct and proximate result of Defendant's violation of the UCL, Plaintiffs and California Subclass members lost money or property, including, but not limited to benefit of the bargain losses in the form of monies paid to Defendant on their behalf and intended to be devoted to data security, lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, and actual misuse of the compromised data.

**ANSWER:** Defendant denies the allegations in Paragraph 270.

271. Defendant knew or should have known that Defendant's computer systems and data security practices were inadequate to safeguard Plaintiffs' and California Subclass members' Private Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful and unfair practices and acts were knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and California Subclass members.

**ANSWER:** Defendant denies the allegations in Paragraph 271.

272. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its unfair business practices.

**ANSWER:** Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever. Defendant denies the remaining allegations in Paragraph 272.

273. Plaintiffs and the California Subclass members have suffered injury-in-fact and would not have done business with and/or provided their PII to Defendant if they had known that their association would put their PII at risk. Plaintiffs and the California Subclass would not have given Defendant their PII had they known that their PII was vulnerable to a data breach. Likewise, Plaintiffs and California Subclass members seek an order mandating that Defendant implement adequate security practices to protect California Subclass members' Private Information. Additionally, Plaintiffs and the California Subclass members seek and request an order awarding Plaintiffs and the California Subclass restitution of the money wrongfully acquired by Defendant by means of Defendant's unfair and unlawful practices.

**ANSWER:** Defendant denies the allegations in Paragraph 273. Defendant denies that Plaintiffs or anyone else are entitled to any relief in any form whatsoever.

WHEREFORE, Defendant, Plaza Home Mortgage, Inc., denies that Plaintiffs are entitled to any relief in any form whatsoever, requests that judgment be entered in favor of Defendant and against Plaintiffs, and requests any further relief that this Honorable Court finds just and appropriate.

**JURY DEMAND**

Defendant demands a Jury Trial in the above-captioned action.

Dated: October 9, 2026

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ David J. Aveni*

David J. Aveni, Esq.
Attorneys for Defendant,
Plaza Home Mortgage, Inc.

**DEFENDANT'S AFFIRMATIVE DEFENSES**

Defendant, Plaza Home Mortgage, Inc., by its undersigned counsel, pleading in the alternative and without prejudice to its denials above, asserts the following Affirmative Defenses to Plaintiffs' Consolidated Class Action Complaint, without assuming the burden of proof on such defenses that would otherwise rest with the Plaintiffs:

1. **Lack of Standing and No Cognizable Injury:** Plaintiffs and putative class members lack standing because they have not suffered any concrete, particularized, actual, or imminent injury fairly traceable to any conduct of Defendant and redressable by this Court. Any alleged increased risk of future harm is speculative and insufficient to confer standing or to support a cognizable claim.

2. **Third-Party Criminal Acts:** The subject data event was caused by the criminal acts of a third party. Defendant does not owe any duty to protect Plaintiffs from the criminal acts of a third party.

3. **Intervening and/or Superseding Cause:** The subject data event was caused by the acts of third parties that break the chain of causation and relieve Defendant from any liability.

4. **Third-Party Comparative Fault:** The fault of people or entities other than Defendant caused or contributed to cause Plaintiffs' alleged injuries, and any award in favor of Plaintiffs must be reduced by an amount proportionate to the degree to which the fault of such third parties caused or contributed to cause Plaintiffs' alleged injuries.

5. **Plaintiffs' Comparative and Contributory Fault:** Plaintiffs were comparatively at fault in how they conducted their affairs relative to the subject data event, including their own protections for their personal information and their response to the subject data event, and such comparative fault caused or contributed to Plaintiffs' alleged injuries.

6. **Failure to Mitigate Damages:** Plaintiffs failed to take reasonable steps to minimize or prevent Plaintiffs' alleged injuries.

7. **Assumption of Risk:** Plaintiffs knew about the alleged risks and voluntarily undertook those risks that caused or contributed to cause Plaintiffs' alleged injuries.

8. **Consent:** Plaintiffs knowingly and willingly agreed to, or participated in, those actions which Plaintiffs claim to have caused or contributed to cause their alleged injuries.

9. **Offset:** Plaintiffs' alleged injuries must be offset to the extent of any compensation, benefit, or value Plaintiffs have already received for such injuries, including from collateral sources and from credit monitoring or other services provided by Defendant.

10. **No Private Right of Action:** To the extent Plaintiffs' claims rely on alleged violations of the Federal Trade Commission Act (15 U.S.C. § 45) or other statutes that do not provide a private right of action, such claims are barred.

11. **Choice of Law:** Plaintiffs' claims on behalf of a Nationwide Class are barred to the extent that the laws of states other than California apply to the claims of out-of-state class members and those laws differ materially from California law.

12. **Preemption:** Plaintiffs' claims are preempted, in whole or in part, to the extent they seek to impose obligations that conflict with or are preempted by federal law.

13. **Economic Loss Rule:** Plaintiffs' negligence claims are barred by the economic loss rule, which precludes recovery in tort for purely economic losses absent physical injury or property damage.

14. **Safe Harbors:** Plaintiffs' claims are barred to the extent Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information at issue, consistent with Ohio Rev. Code § 1354.02, Utah Code § 78B-4-701, Conn. Gen. Stat. § 42-901, Iowa Code Ann. § 554G.2, 18 Ok. Stat. § 2070, Tex. Bus. & Com. Code § 542.003, Cal. Civ. Code § 1798.150, and other such similar laws.

Defendant reserves its rights to add affirmative defenses by amendment after discovering facts that support any such additional affirmative defenses.

WHEREFORE, Defendant, Plaza Home Mortgage, Inc., denies that Plaintiffs are entitled to any relief in any form whatsoever, requests that judgment be entered in favor of Defendant and against Plaintiffs, and requests any further relief that this Honorable Court finds just and appropriate.

**JURY DEMAND**

Defendant demands a Jury Trial in the above-captioned action.

Dated: October 9, 2026

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ David J. Aveni*

David J. Aveni, Esq.
Attorneys for Defendant,
Plaza Home Mortgage, Inc.